UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ELMIRA PRESTON, ET AL. | * | CIVIL ACTION |
| VERSUS | * | NO. 06-3179 |
| TENET HEALTHSYSTEM MEMORIAL MEDICAL CENTER, INC., ET AL. | * | SECTION "L" (4) |

ORDER AND REASONS

On July 14, 2006, the Plaintiffs filed a Motion to Remand (Rec. Doc. 15) the above-captioned case to state court.  This motion came for hearing with oral argument on August 22, 2006.  The Court concluded that more information was needed on the jurisdictional issues and ordered the parties to conduct limited discovery.  During the discovery period, however, the Plaintiffs filed a Motion to Withdraw their Motion to Remand (Rec. Doc. 54).  The Court granted the Plaintiffs' Motion to Withdraw (Rec. Doc. 59), but ordered that the parties file supplemental briefing on information revealed through the jurisdictional discovery process.  As the Court has now been fully advised on the jurisdictional issues, the Court determines for the following reasons that it may not hear this case and orders that the action be REMANDED to the Civil District Court for the Parish of Orleans.

**I.  Factual and Procedural Background**

This lawsuit arises from the injuries and/or deaths of patients at Memorial Medical Center in New Orleans in the aftermath of Hurricane Katrina in late August and early September of 2005.  After the storm, conditions at the hospital deteriorated rapidly.  Without electrical power, temperatures in the hospital quickly approached one-hundred-and-ten degrees, sanitation

1

systems were overwhelmed, and life-altering decisions were made regarding patient evacuations. According to reports, more than one thousand people were trapped at the hospital due to floodwaters rising more than eight feet in height. Though helicopter rescues began within a day of the storm's passing and several rescue boats ferried hundreds of patients to higher ground, many vulnerable patients remained trapped at the hospital. In total, approximately thirty-five people passed away in these chaotic circumstances.[1]

Various patients and relatives of both deceased and allegedly injured patients ("Plaintiffs") filed the instant action against Tenet Healthsystem Memorial Medical Center, Inc. d/b/a Memorial Medical Center ("Memorial") in Civil District Court for the Parish of Orleans on October 6, 2005. The Plaintiffs subsequently amended their petition four times to include a request for class certification under Louisiana law and to include as Defendants LifeCare Management Services, Inc., d/b/a LifeCare Hospital and LifeCare Hospital of New Orleans, L.L.C., d/b/a LifeCare Hospital (together, "LifeCare"), who leased space from Memorial and operated an acute-care unit on the seventh floor of the hospital.[2]

In their petition, the Plaintiffs bring claims against Memorial, LifeCare, and their officers and agents (the "Defendants") asserting various allegations of negligence and intentional misconduct, "reverse patient dumping" under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and involuntary euthanization. The Plaintiffs

---

[1] *See, e.g.*, Jeffrey Meitrodt, *For Dear Life: How Hope Turned to Despair at Memorial Medical Center*, Times-Picayune, Aug. 20 - Aug. 24, 2006, A-1 (five-part story).

[2] A Sixth Supplemental and Amended Complaint to include additional Plaintiffs was subsequently filed on November 7, 2006 (Rec. Doc. 88), after the Plaintiffs' Motion to Remand had been submitted and withdrawn.

have filed a class action and propose certification of a class composed as follows:

> All patients of Memorial and LifeCare who sustained injuries including death or personal injury as a result of the insufficient design, inspection and/or maintenance of LifeCare and/or Memorial's back-up electrical system, its failure to implement its evacuation plan and/or its emergency preparedness plan and/or its failure to have a plan which would have facilitated the safe transfer of patients out of harm's way, and its failure to have a plan of care for patients in the event of a power outage in the wake of Hurricane Katrina within the property owned by Memorial and leased and/or operated by LifeCare on or about the time period of August 26[ ]...through and including August 29, 2005 and thereafter, and all persons who sustained personal injury as a result of the deaths or personal injuries to patients of LifeCare and Memorial. . . .

(Pls.' Fifth Supplemental and Am. Pet. for Damages).[3]

## II. LifeCare's Notice of Removal

Defendant LifeCare filed a Notice of Removal on June 18, 2006, and subsequently filed an Amended Notice of Removal on June 26, 2006, asserting: (a) that jurisdiction is proper under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), as LifeCare was a person acting under color of federal authority and has colorable defenses to the Plaintiffs' claims; (b) the case falls under the Multiparty, Multiforum Trial Jurisdiction Act, ("MMTJA"), 28 U.S.C. § 1369, as it involves minimal diversity and a single accident in which at least 75 persons died; (c) the proposed class action consists of more than 100 persons, the aggregated amount in controversy exceeds $5 million, excluding interests and costs, and it meets the minimum diversity requirements of the Class Action Fairness Act of 2005 ("CAFA"); (d) the EMTALA claim

---

[3] LifeCare represents that, to date, approximately one-hundred-and-twenty claims have been filed arising out of the conditions at Memorial following Hurricane Katrina. LifeCare has removed a number of these individual cases to this Court stating the same bases of federal jurisdiction as asserted here. Although these related cases have not been consolidated, many have been transferred to this Section and will be governed by this analysis. Individual remand orders will be entered in each case.

presents a federal question for which the Court has original subject matter jurisdiction under 28 U.S.C. § 1331; and (e) the remainder of the Plaintiffs' claims are so related to the federal claim that this Court should exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367.

### III.  Standard for Remand

On July 14, 2006, the Plaintiffs filed a Motion for Remand (Rec. Doc. 15).  As noted, the Plaintiffs have withdrawn this Motion.  However, on November 13, 2006, in response to LifeCare's supplemental briefing opposing remand, LifeCare's co-defendant Memorial filed a memorandum supporting remand and adopting the Plaintiffs' since-withdrawn Motion (Rec. Doc. 93).  Thus, the Court has before it Plaintiffs' Motion for Remand resurrected, adopted, and urged by Memorial, which had never consented to removal in the first place.

Whether or not the Motion is viable in view of the Plaintiffs' withdrawal is of no consequence since the Court must *sua sponte* address the issue and remand the action back to state court if it determines at any time that it lacks subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c); *Ziegler v. Champion Mortgage Co.*, 913 F.2d 228 (5th Cir. 1990).  LifeCare claims federal jurisdiction under any of four bases:  (i) the Federal Officer Removal Statute; (ii) MMTJA; (iii) CAFA; and (iv) EMTALA.  The Court will address each of LifeCare's asserted bases of federal jurisdiction.

The removing defendant ordinarily carries the burden of showing the existence of federal jurisdiction.  *See Jernigan v. Ashland Oil, Inc.*, 989 F.3d 812, 815 (5th Cir. 1993).  As a general matter, the removal statute is to be construed narrowly and in favor of remand to state court.  *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941).  Indeed, "doubts regarding whether

removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). Accordingly, all disputed questions of fact must be resolved in favor of the non-moving party. *See Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995). However, as explained below, the traditional standard of review does not apply when reviewing removal under the Federal Officer Removal Statute or the Class Action Fairness Act.

## IV. Federal Officer Removal Statute

The Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), provides in pertinent part:

(a) A civil action . . . commenced in a State Court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) The United States . . . or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .

The purpose of this statute is to provide a federal forum in cases where federal officials are entitled to raise a defense arising out of their official duties. *See Arizona v. Manypenny*, 451 U.S. 232, 241 (1981). Though generally remand to state court is favored when removal jurisdiction is questionable, removal jurisdiction under the Federal Officer Removal Statute must be broadly construed. *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Indeed, the Court must interpret the statute liberally, resolving any factual disputes in favor of federal jurisdiction. *See Louisiana v. Sparks*, 978 F.2d 226 (5th Cir. 1992). Removal is proper in this case under § 1442(a)(1) if LifeCare (1) is a "person," (2) that acted under color of federal authority when committing the allegedly tortious conduct, and (3) can assert a colorable federal defense. *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998) (applying three-part test

5

elucidated by United States Supreme Court in *Mesa v. California*, 489 U.S. 121 (1989)).

In the present case, LifeCare, a private entity, contends that it is a "person acting under" the direction of an officer of the United States and, therefore, that it is entitled to litigate the Plaintiffs' claims in a federal forum. The parties agree that LifeCare is a "person" for purposes of the statute. Questions remain whether LifeCare acted "pursuant to a federal officer's directions" and whether "a casual nexus" exists "between the defendant['s] action under color of federal office and the plaintiff[s'] claims." *Winters*, 149 F.3d at 398. The Court must also determine whether LifeCare can assert a colorable federal defense.

LifeCare contends that it conducted the evacuation of Memorial at the direction of a federal officer and, therefore, that this matter belongs in federal court. In support of removal, LifeCare submits the affidavits of two of its employees, Marie B. Cote and Diane Cloinger, who claim that a federal officer informed them that the federal government had assumed control of patient evacuations following Hurricane Katrina and that LifeCare was not authorized to execute its own evacuation plan. The alleged federal official is Knox Andress.

Mr. Andress is a registered nurse at Christus Schumpert Health Systems, which is a private entity. Mr. Andress also serves as a District Regional Coordinator for the United States Health Resources Services Administration ("HRSA"). The HRSA is a branch of the United States Department of Homeland Security.

In 2002, the Louisiana Department of Health and Hospitals was awarded a $1.9 million grant from HRSA for statewide bioterrorism and public health emergency planning.[4] The grant

---

[4] *See* Louisiana Hospital Association, HRSA Emergency Preparedness, http://www.lhaonline.org/displaycommon.cfm?an=1&subarticlenbr=138 (last visited Nov. 20, 2006); *see also* 42 U.S.C.A. § 247d-3a (statutory authorization for the grant).

was continued in 2003 and 2004, with an additional $7.7 million each year, and in 2005 with an additional $7.3 million. Incidental to meeting the objectives of the federal grant, Louisiana has been divided into nine regions, with each region having at least one HRSA District Regional Coordinator assigned to it. Mr. Andress is the HRSA District Regional Coordinator for Region 7 in Louisiana. LifeCare argues that HRSA exercised control over the Louisiana Department of Health and Hospitals and Mr. Andress by virtue of the bioterrorism grant and the concern that the grant might not be renewed in coming years. The Court is not persuaded.

In his deposition, Mr. Andress testified that he is not employed by the federal government in any capacity. (Andress Dep. 79:17-80:11, Sept. 6, 2006.) Indeed, Mr. Andress was examined at length on this topic and after reviewing the relevant testimony, the Court finds that Mr. Andress is not a federal officer by virtue of his volunteer position as an HRSA District Regional Coordinator. (Andress Dep. 12:21-21:14.) Assuming, *arguendo*, that Mr. Andress is a federal officer, the Court nevertheless finds that he did not exercise the requisite control over LifeCare necessary to invoke 28 U.S.C. § 1442(a)(1).

On the days leading up to and following Hurricane Katrina's landfall, the Louisiana Hospital Association ("LHA") conducted conference calls with the HRSA District Regional Coordinators, including Mr. Andress. (Andress Dep. 26:17-28:14.) These LHA calls took place at 10:00 a.m. and 2:00 p.m. each day. *Id.* At his deposition, Mr. Andress testified that he conducted additional conference calls at 11:00 a.m. with various administrators from hospitals within his region, and that LifeCare employees participated in several of these calls. (Andress Dep. 30:22-32:17.) In addition, Mr. Andress testified that Ms. Cote and Ms. Cloinger contacted him on several occasions to discuss the evacuation of Memorial. (Andress Dep. 32:18-34:14.)

Indeed, Mr. Andress testified that the LifeCare representatives called to inform him that people were trapped in the LifeCare unit at Memorial and that they needed his help to get them evacuated. (Andress Dep. 65:24-67:8.)

In her affidavit, Ms. Cote states that Mr. Andress identified himself as a representative of FEMA and informed her that "FEMA and the United States Coast Guard had assumed control of all evacuation efforts of New Orleans healthcare facilities." (Cote Aff. 1, Aug. 3, 2006.) She also states that Mr. Andres declared that "LifeCare was not authorized by FEMA to implement its evacuation plan without further direction from FEMA." (Cote Aff. 2.) Ms. Cloinger states in her affidavit that she was advised by Mr. Andress that "FEMA's [evacuation] plan was to be followed by all hospitals and individuals." (Cloinger Aff. 2, Aug. 4, 2006.) In his deposition, Mr. Andress testified that he did not identify himself as a FEMA representative (Andress Dep. 58:25-59:10, 81:14-19) and did not represent that FEMA was in control nor that LifeCare was prevented from executing its own evacuation plan (Andress Dep. 80:12-83-7).

LifeCare principally relies on *Dixon v. Georgia Indigent Legal Services, Inc.*, 388 F. Supp. 1156 (S.D. Ga. 1975), in support of its argument that it acted under the direction of a federal officer. In *Dixon*, the plaintiffs sought to enjoin two Georgia non-profit corporations from engaging in the unauthorized practice of law. *Id.* at 1157. The defendants removed the case to federal court pursuant to the Federal Officer Removal Statute. The district court held that the non-profit corporations were administering federally-funded legal assistance programs for the indigent and, therefore, were acting under the direction of the federal agencies that funded them. *Id.* at 1162-63.

No similar "federal interest" is involved in this case. *See Winters*, 149 F.3d at 398. The

most that can be said is that Mr. Andress served as a conduit between the federal government and various hospitals throughout Louisiana through which information flowed.  When a private entity such as LifeCare invokes the Federal Officer Removal Statute, it must "demonstrate that a federal officer has direct and detailed control over it."  *Kaye v. Sw. Airlines Co.*, No. 05-0450, 2005 WL 2074327, at *3 (N.D. Tex. Aug. 29, 2005) (citing *Winters*, 149 F.3d at 399-400 and 16 James Wm. Moore et al., Moore's Federal Practice § 107.15(1)(b)(ii) (3d ed. 2005)).  Indeed, in *Winters*, the private entity was compelled to produce and deliver the product Agent Orange pursuant to detailed regulations under threat of criminal sanction.  *See Winters*, 149 F.3d at 398-400; *see also Teague v. Bell Helicopter Servs., Inc.*, No. 03-004, 2003 WL 21135481 (N.D. Tex. Feb. 12, 2003) (finding federal direction where the government dictated every aspect of design and manufacture of helicopter).  LifeCare has not demonstrated that Mr. Andress exercised "direct and detailed control" over their operations.

The Court recognizes that the LifeCare personnel and Mr. Andress have different recollections of their communications in late August, 2005.  While the Federal Officer Removal Statute is to be liberally construed, it must nevertheless be interpreted "with the highest regard for the right of the states to make and enforce their own laws in the field belonging to them under the Constitution."  *Dixon*, 388 F. Supp. at 1162 (citation omitted).  Accordingly, the Court finds that LifeCare has failed to demonstrate that it acted under color of federal authority in allegedly failing to maintain conditions and procedures sufficient to sustain the lives of its patients and, thus, that removal under the Federal Officer Removal Statute was improper.

**V.  Multiparty, Multiforum Trial Jurisdiction Act ("MMTJA")**

LifeCare also argues that removal is proper under 28 U.S.C. § 1441(e)(1)(A) because

this "action could have been brought in a United States district court under section 1369." Section 1369, the Multiparty, Multiforum Trial Jurisdiction Act ("MMTJA"), creates original federal jurisdiction over "any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location." 28 U.S.C. § 1369(a).

The MMTJA seeks "to allow full consolidation of state and federal cases related to a common disaster to eliminate multiple or inconsistent awards arising from multiforum litigaiton." *Southall v. St. Paul Travelers Ins. Co.*, No. 06-1235, 2006 WL 2385365 (E.D. La. Aug. 16, 2006); s*ee* Laura Offenbacher, Note, *The Multiparty, Multiforum Trial Jurisdiction Act: Opening the Door to Class Action Reform*, 23 Rev. Litig. 177 (2004). Enacted in 2002 shortly after the terrorist attacks of September 11, 2001, the MMTJA has rarely been invoked, prior to Hurricane Katrina that is. *See, e.g., Passa v. Derderian*, 308 F. Supp. 2d 43 (D. R.I. 2004) (finding removal of wrongful death and negligence claims arising from a nightclub fire proper under the MMTJA). LifeCare argues that the various levee breaches following Hurricane Katrina qualify as an MMTJA "accident" and that 75 natural persons died in the subsequent flooding of New Orleans. Therefore, LifeCare argues that this case could have been brought in federal court under § 1369 and is thus properly removed.

An "accident" under § 1369 is defined as "a sudden accident, or natural event culminating in an accident, that results in death incurred at a discrete location by at least 75 natural persons." 28 U.S.C. § 1369(c)(4). While courts have refused to consider Hurricane Katrina an "accident," see *Hillery v. State Farm Fire & Cas. Co.*, No. 06-2909, 2006 U.S. Dist. LEXIS 51446 (E.D. La. July 26, 2006) and *Willhoft v. Kert Leblanc Ins. Agency*, No. 06-1235,

2006 U.S. Dist. LEXIS 45796 (E.D. La. July 5, 2006), individual levee breaks caused by Hurricane Katrina might qualify as "accidents" under the statute. *See Flint v. La. Farm Bureau Mut. Ins. Co.*, No. 06-2546, 2006 U.S. Dist. LEXIS 58264, at *4-12 (E.D. La. Aug. 15, 2006).

Even if the hurricane-related levee breaches are MMTJA "accidents," it is clear that the requirement that 75 deaths occur at a discrete location has not been satisfied in this case. While the accident may not need to be localized, the plain language of the statute requires that the deaths resulting from the accident must occur at a discrete location. *See* Joseph M. Creed, Comment, *Choice of Law Under the Multiparty, Multiforum Trial Jurisdiction Act of 2002*, 17 Regent U. L. Rev. 157 (2005). LifeCare would have the Court define the "discrete location" in this case as the metro New Orleans area, in which it is undisputed that at least 75 deaths occurred following Hurricane Katrina. LifeCare's argument is untenable and would effectively deprive the Louisiana state courts of jurisdiction over any dispute related to Hurricane Katrina. Therefore, the Court finds that Memorial is the "discrete location" in this case. It is undisputed that 75 deaths did not occur at the hospital; accordingly, federal jurisdiction does not exist under the MMTJA.[5]

## VI. Class Action Fairness Act ("CAFA")

The Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.), expands federal diversity jurisdiction over interstate class actions. A defendant may remove an action to federal court under CAFA if a threshold

---

[5] To the extent that LifeCare has been subjected to the burdens of multiforum litigation, it has brought such burdens upon itself by removing a number of these cases from the Civil District Court for the Parish of Orleans. It does not appear that claims have been filed elsewhere.

amount in controversy and minimal diversity exist.  Specifically, 28 U.S.C. § 1332(d)(2) states that a federal court has original jurisdiction over a class action if the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and at least one class member is a citizen of a different state than one or more defendants.  In addition, the proposed class must be comprised of at least 100 members.  28 U.S.C. § 1332(d)(5).

However, CAFA contains exceptions to this expanded jurisdiction which may bar the court's ability to hear a case otherwise satisfying the statute.  Sections 1332(d)(3) and (4) provide federal courts with discretionary authority to decline jurisdiction and also prescribe circumstances where the Court is required to decline jurisdiction.

For example, the "local controversy" and "home-state controversy" carve-out provisions, located at 28 U.S.C. § 1332 (d)(4)(A) and (B), mandate federal courts to refuse jurisdiction when a case is distinctly local in nature.  *See Evans v. Walter Indus., Inc.,* 449 F.3d 1159 (11th Cir. 2006); *Hart v. FedEx Ground Package Sys. Inc*., 457 F.3d 675, 678 (7th Cir. 2006).  Under this section, a district court "shall" decline jurisdiction

> (A)(i) over a class action in which–
>
> > (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> >
> > (II) at least 1 defendant is a defendant–
> >
> > > (aa) from whom significant relief is sought by members of the plaintiff class;
> > >
> > > (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> > >
> > > (cc) who is a citizen of the State in which the action was originally filed; and

>> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or
>
> (B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

28 U.S.C. § 1332 (d)(4).

When determining the citizenship of the plaintiffs, the Court looks to citizenship at the time the complaint or amended complaint was filed, or if the case stated by the initial pleading is not subject to federal jurisdiction, citizenship is determined as of the date of service by plaintiffs of an amended pleading, motion, or other paper, indicating the existence of federal jurisdiction. 28 U.S.C. § 1332(d)(7). For purposes of diversity, "citizenship has the same meaning as domicile." *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954). Residence establishes prima facie indication of domicile, but it must be accompanied by an intent to remain in that state. *Id*. Thus, prolonged absence or "[m]ere presence in a new location does not effect a change of domicile; it must be accompanied with requisite intent." *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996).

With this standard of citizenship in mind, the Court reviews the information provided by the parties through the discovery process to determine whether it is required to send the action back to state court based on the mandate set forth in 28 U.S.C. § 1332(d)(4). Though the Fifth Circuit holds that the plaintiffs carry the burden of proving exceptions to jurisdiction under CAFA, see *Frazier v. Pionner Americas, LLC*, 455 F.3d 542, 546 (5th Cir. 2006), this Court found in this case that information regarding the patients, their relatives, and other beneficiaries

13

was most likely in the hands of the Defendants and thus ordered the Defendants to produce this information.[6] Specifically, the Court required Memorial to provide the addresses and phone numbers of those patients who died at Memorial within the relevant time period, as well as the phone numbers of the patients' emergency contacts listed on their medical forms (Rec. Doc. 39). The Court also ordered Memorial to provide the percentage of patients in the entire Memorial facility with Louisiana addresses (Rec. Doc. 43).

This information presents a valuable indication of the citizenship of the proposed class members and reveals that of the thirty-five patients who died in the storm's aftermath, only two provided addresses outside the State of Louisiana (Rome Aff., Sept. 6, 2006). These same two deceased individuals' emergency contacts were the only contacts who had telephone numbers with a New Orleans area code. Additionally, Memorial's Medical Records Supervisor provided a second affidavit in which he attests that of the 256 patients hospitalized in the entire hospital at the time when Hurricane Katrina struck on August 29, 2005, only seven of those patients, or 2.73% of the total patient population, indicated that they were residents of other states (Rome Aff., Sept.18, 2006).

In a supplemental brief, LifeCare submits an affidavit of a private investigator who traced the mailing addresses of 146 individuals LifeCare's counsel identified as potential class members (Mazur Aff., Oct. 24, 2006). The investigator claims that 49 of 146 individuals

---

[6] Moreover, given Memorial's opposition to LifeCare's removal of this matter, the Court was not troubled burdening Memorial in this respect. The difficulty of determining whether the CAFA carve-outs have been satisfied is indeed "exacerbated by the fact that this determination must be made as a threshold matter" upon an undeveloped factual record. *See* Edward F. Sherman, *Class Actions After the Class Action Fairness Act of 2005*, 80 Tul. L. Rev. 1593, 1598 (2006).

identified currently reside outside of Louisiana. However, as mentioned above, domicile, and hence citizenship, is determined by looking at residence and intent, both at the date the suit was filed. LifeCare did not provide any information regarding the length of time that these individuals have been residing outside of Louisiana, even though the investigator's review included collecting former addresses, property transactions, prior driver's license information, prior automobile ownership, prior residential and cellular phone numbers, etc., all useful aids in determining whether these individuals were displaced following Hurricane Katrina. Additionally, if these individuals were in fact displaced, LifeCare did not indicate whether these individuals intend to remain in their new state of residence. Eight affidavits submitted by the Plaintiffs with their Motion to Remand suggest that at least some displaced proposed class members intend to return to New Orleans in the near future (Pls.' Mot. to Remand Ex. B).[7] Every single one of these individuals state that they lived in New Orleans at the time of the hurricane, but were forced to evacuate to another state. However, they continue to have every intention of returning to the New Orleans area.

      Though it is the Plaintiffs, and not LifeCare, who must demonstrate that an exception to CAFA jurisdiction applies, and though the Plaintiffs have since withdrawn their Motion to Remand and thus do not contest CAFA jurisdiction, the Court is nevertheless required to examine the record and determine whether or not it has jurisdiction. Furthermore, though "CAFA's legislative history suggests that Congress intended the local controversy exception to

---

[7] *See* Affidavits of Darlene Preston, Cynthia Preston, Rose La France, Elmira Preston, Terry Gaines-Oden, Wanda Preston, Anthony Preston, Aster Preston (stating though displaced to other states due to Hurricane Katrina, they are residents and domiciliaries of New Orleans and intend to return to the city as soon as housing becomes available).

be a narrow one, with all doubt resolved 'in favor of exercising jurisdiction over the case,'" *Evans*, 449 F.3d at 1163 (quoting S. Rep. No. 109-14 at 42, U.S. Code Cong. & Admin. News 3, 40), Congress also emphasized that the purpose of § 1332(d)(4) was to "identify a truly local controversy–a controversy that uniquely affects a particular locality to the exclusion of all others." *Id.* From a review of the evidence, it is clear to the Court that more than two-thirds of the proposed plaintiff class are citizens of Louisiana, both Defendants are incorporated in Louisiana and hence citizens of this State (Pls.' Mot. to Remand Ex. C), and that the injuries took place in Louisiana. Therefore, the Court finds that the "local controversy" and "home state" exceptions apply and that it must remand the action back to state court under § 1332(d)(4)(A) and/or (B).

Moreover, the Court also believes it appropriate to use its discretionary authority to remand the action back to state court under 28 U.S.C. § 1332(d)(3). That provision provides, in pertinent part:

> A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction . . . over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of–
>
> > (A) whether the claims asserted involve matters of national or interstate interest;
> >
> > (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
> >
> > (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants; [and]
>
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States
>
> . . . .

28 U.S.C. § 1332(d)(3).

The Court finds that a distinct nexus exists between the forum of Louisiana, the Defendants, and the proposed class. All of the Defendants' actions and all of the alleged injuries to patients took place at Memorial in New Orleans, Louisiana within a defined period of time. Most of the claims involve issues of negligence which will be governed by Louisiana law. Both of the Defendants are citizens of Louisiana and over 97% of the patients registered at the hospital on August 29, 2005 provided information indicating a New Orleans residence. Though the effects of Hurricane Katrina caused the displacement of many members of the proposed class, it is anticipated that a majority of the proposed class members remain citizens of Louisiana. Therefore, the Court finds that this local controversy must be remanded to state court.

**VII. Emergency Medical Treatment and Active Labor Act ("EMTALA")**

Lastly, LifeCare asserts that the Plaintiffs' EMTALA claim provides federal question jurisdiction under 28 U.S.C. § 1331. The Plaintiffs allege that the Defendants' decision to evacuate certain patients and abandon others amounts to "reverse patient dumping" under the Emergency Medical Treatment and Active Labor Act ( "EMTALA"), 42 U.S.C. § 1395dd (Pls.' Supplemental and Am. Pet. for Damages). Memorial has filed a Motion to Dismiss for Failure to State a Claim (Rec. Doc. 7). However, the hearing for this motion has been continued until the

jurisdictional issues are resolved.

In this case, a viable cause of action under federal law does not exist for "reverse patient dumping" and thus does not confer jurisdiction under 28 U.S.C. § 1331.  EMTALA was enacted by Congress to prevent hospitals and physicians from refusing to treat patients who lacked financial means to pay for services.  *See Marshall v. E. Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 322 (5th Cir. 1998).  Accordingly, EMTALA provides that administrative proceedings may be conducted to assess civil monetary penalties against a hospital or doctor who is found to have improperly transferred or discharged an emergency room patient before the patient's medical condition was stabilized.  *See* 42 U.S.C. § 1395dd(d)(1)(A)-(B).  The statute also creates a private right of action for an individual injured by the "participating hospital."  42 U.S.C. § 1395dd(d)(2)(A).  However, the clear language of the statute indicates that the private right of action is only available to those patients who were injured through the hospital's improper transfer or discharge of the patient.  Thus, a claim of "reverse dumping," i.e., *not* transferring or discharging a patient, is not valid.  This determination is consistent with legislative intent as "the statute was not intended to be used as a federal malpractice statute."  *Marshall*, 134 F.3d at 322.

Though the failure to state a claim is considered a judgment on the merits and may not normally be asserted until after the federal court determines that it has jurisdiction to hear the case, the United States Supreme Court has established exceptions whereby a "suit may be dismissed for jurisdiction where the alleged claim under the Constitution or federal statutes appears to be immaterial . . . wholly unsubstantial or frivolous."  *Patterson v. Hamrick*, 889 F. Supp. 913, 915 (E.D. La. 1995) (citing *Bell v. Hood*, 327 U.S. 678, 682-83 (1946); *Oneida Indian Nation of New York State v. Oneida*, 414 U.S. 661, 666 (1974); *Grinter v. Petroleum*

*Operation Support Serv., Inc.*, 846 F.2d 1006, 1008 (5th Cir. 1988)).

Even if it could be argued that federal jurisdiction may exist for the EMTALA claim, the Court finds that the state-law claims predominate over the case in its entirety and thus remand under 28 U.S.C. § 1441(c) is appropriate. *See Miller v. John Sexton Sand, Gravel Corp.*, No. 96-315, 1996 U.S. Dist. LEXIS 21142, at *11 (N.D. Miss. Sept. 18, 1996) (citing *Moralez v. Meat Cutters Local 539*, 778 F. Supp. 368, 370-71 (E.D. Mich. 1991) and *Alexander v. Goldome Credit Corp.*, 772 F. Supp. 1217, 1223-35 (M.D. Ala. 1991)).[8]

> The case at bar is a prime example of a case that should be heard in state court. To allow the entire case to be removed to federal court on the basis of a relatively insignificant claim when compared to the state law claims is a classic illustration of 'the tail wagging the dog.' There can be no doubt that state law predominates in this case.

*Miller,* 1996 U.S. Dist. LEXIS 21142, at *11 (quoting *Alexander*, 772 F. Supp. at 1225).

## VIII. Conclusion

For the foregoing reasons, the Court finds that it lacks subject matter jurisdiction to hear this case. Therefore, IT IS ORDERED that the action is hereby REMANDED to Civil District

---

[8] The federal EMTALA claim and state-law claims seek separate relief for distinct wrongs. For example, the EMTALA claim seeks damages for failure to transfer or discharge patients, whereas the state-law claims involve issues such as insufficient design, inspection and/or maintenance of Memorial's back-up electrical system, failure to implement its evacuation plan and/or its emergency preparedness plan, and failure to have a plan of care for patients in the event of a power outage in the wake of Hurricane Katrina. Thus, these are separate and independent claims and § 1441(c) is applicable:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1441(c).

Court for the Parish of Orleans, State of Louisiana.

    New Orleans, Louisiana, this 21st day of November, 2006.

                                          UNITED STATES DISTRICT JUDGE